**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3443-17T2

L.M.,

     Plaintiff-Appellant,

v.

K.D.,

     Defendant-Respondent.

_____

        Argued September 17, 2019 – Decided October 23, 2019

        Before Judges Accurso and Gilson.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Cape May County, Docket No. FM-05-0180-11.

        John Anthony Underwood argued the cause for appellant (Underwood & Micklin, LLC, attorneys; John Anthony Underwood on the briefs).

        K.D., respondent, argued the cause pro se.

PER CURIAM

In this appeal, we consider whether the family court erred in holding that New Jersey retained exclusive jurisdiction over a parenting time dispute concerning a daughter who was over the age of eighteen, had been living with her mother in Virginia for more than five years, and where a Virginia court had appointed the mother the guardian of the daughter because the daughter was mentally incapacitated. We hold that under these circumstances New Jersey no longer had jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), N.J.S.A. 2A:34-53 to -95. Accordingly, we vacate an order entered on February 28, 2018, and remand with direction that the custody and parenting matter in New Jersey be dismissed.

I.

This appeal arises out of an ongoing custody and parenting time dispute between L.M. (Lynne), the mother, who lives in Virginia, and K.D. (Kurt), the father, who lives in New Jersey.[1] Lynne and Kurt were married in May 1990. While married, they adopted two children: S.D. (Sally), a daughter who was born in January 1998; and Z.D. (Zeek), a son who was born in May 1998. Zeek was emancipated in 2016, and he is not the subject of this parenting time dispute.

---

[1] Because the daughter is incapacitated, we use initials and fictitious names to protect the privacy interests of the parties.

A-3443-17T2

Kurt and Lynne divorced in New Jersey in December 2011.  The final judgment of divorce provided that they would share joint legal and residential custody of their children.  In April 2013, Lynne and Kurt agreed to change the custody arrangement.  Accordingly, they asked the New Jersey family court to enter an order, dated April 2, 2013, which provided, in relevant part, that (1) Lynne and Sally would relocate to Virginia; (2) Lynne would be the parent of primary residential custody of Sally; (3) Kurt would be the parent of primary residential custody of Zeek; (4) each non-residential custodial parent would have parenting time with the child who was not living with them in accordance with an agreed-upon schedule; and (5) Lynne and Kurt would continue to "share joint custody" of both children.

On September 13, 2013, the New Jersey family court entered another order allowing Kurt to relocate to Florida with Zeek.[2]  That order also set forth a new visitation schedule for each parent. Under that order, Kurt was to have parenting time with Sally on her spring break, during the summer, and on alternating Thanksgiving and Christmas holidays.  The order also allowed "[a]dditional visitation . . . upon fourteen (14) days-notice to the other party."

---

[2]  The order was dated September 12, 2013, but was filed on September 13, 2013.

A-3443-17T2

In January 2016, Sally turned eighteen years old. On March 2, 2016, a Virginia court entered an order declaring Sally incapacitated and appointed Lynne as her sole guardian. The order also appointed Lynne's brother and sister as standby guardians. The Virginia order was entered after Kurt was given notice of the guardianship application. Kurt did not object to the application and he signed the Virginia order, acknowledging that he had "seen" the order.

Since April 2016, Lynne and Kurt have been involved in ongoing disputes about Kurt's parenting time with Sally and his right to receive medical information and participate in medical decisions concerning Sally. Those disputes have engendered several motions before the New Jersey family court and the court has entered several orders requiring Lynne to comply with the parenting time called for in the September 12, 2013 order.[3]

In August 2017, Kurt applied for an order to show cause in New Jersey seeking sole legal custody of Sally. That application was denied because Kurt failed to demonstrate the existence of any emergent circumstances.

---

[3] After relocating to Florida, Kurt and Zeek moved to Massachusetts. Kurt is currently living in New Jersey. The Family court determined that Kurt continued to be domiciled in New Jersey for jurisdictional purposes under the UCCJEA even while he was living in other states.

While Kurt's request for sole legal custody was pending, Lynne filed a cross-motion to change jurisdiction to Virginia in accordance with the UCCJEA. The family court heard arguments on that motion on November 3, 2017. On February 28, 2018, the court denied Lynne's motion and stated that New Jersey "continues to exercise exclusive jurisdiction" over this matter. The court also issued a thirty-three-page written opinion explaining its reasons for retaining jurisdiction and denying the request for a transfer of jurisdiction to Virginia.

In the family court's opinion, it noted that Lynne had previously requested a transfer to Virginia, but the court found that it had not preclusively decided that jurisdictional issue in a prior order. Accordingly, the court stated that it would consider the jurisdictional issue on the merits. The court then analyzed four substantive issues and held that (1) the UCCJEA applied to Sally even though she was over eighteen years old; (2) the UCCJEA applied to a parenting time order as part of a custody order; (3) the Virginia guardianship order did not supersede the New Jersey orders concerning custody and parenting time; and (4) the matter should not be transferred to Virginia as the most convenient forum under N.J.S.A. 2A:34-71(b).

II.

Lynne now appeals from the February 28, 2018 order denying her motion to transfer jurisdiction to Virginia. We hold that New Jersey no longer has jurisdiction because Virginia has determined that Sally is no longer a child. Moreover, Virginia has jurisdiction over the guardianship and any request for parenting time must be made in Virginia. Accordingly, we vacate the February 28, 2018 order and remand with direction that the Family court dismiss the custody and parenting matter.

The issue before us is a question of law based on undisputed facts. Accordingly, our standard of review is de novo. See Reese v. Weis, 430 N.J. Super. 552, 586 (App. Div. 2013) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). We also note that the family court did not hold an evidentiary hearing on this motion. Thus, the material facts are taken from the written record and the family court did not make any factual findings to which we owe deference. See ibid.

The New Jersey UCCJEA is modeled on the "Uniform Child Custody Jurisdiction and Enforcement Act," promulgated by the National Conference of Commissioners on Uniform State Laws. See UCCJEA prefatory note, 9 (Part IA) U.L.A. 649-50 (1999); see also Senate Judiciary Committee Statement to S.

150 (reprinted following N.J.S.A. 2A:34-53). The Act "ensure[s] that custody determinations are made in the state that can best decide the case." Griffith v. Tressel, 394 N.J. Super. 128, 138 (App. Div. 2007). The UCCJEA "should be interpreted so as to avoid jurisdictional competition and conflict and require cooperation with courts of other states as necessary to ensure that custody determinations are made in the state that can best decide the case." Ibid.

Normally, there are two questions a court should consider when addressing jurisdiction concerning custody of a child. Id. at 139. The first, is whether this state acquired initial "exclusive, continuing jurisdiction" over custody determinations. Ibid. The relevant statute for that determination is N.J.S.A. 2A:34-66(a). That provision of the UCCJEA states that a court of this state has exclusive continuing jurisdiction when it has made the initial custody determination. Here, there is no dispute that New Jersey originally had exclusive continuing jurisdiction.

The second question is whether the court should give up or transfer jurisdiction because of changed circumstances. See N.J.S.A. 2A:34-66. Before reaching that second question, the court must also determine whether the UCCJEA still controls. The UCCJEA governs custody disputes concerning a

"child." N.J.S.A. 2A:34-58. The Act defines a child as "an individual who has not attained 18 years of age." N.J.S.A. 2A:34-54.

We hold that when the issue concerning custody and parenting time came before the New Jersey court in 2017, Sally was no longer a child under the definition of the UCCJEA. The material and controlling facts are that Sally was over the age of eighteen and a Virginia court had entered a guardianship order. Those two undisputed facts establish as a matter of law that on March 2, 2016, the UCCJEA no longer controlled this parenting time dispute. As already noted, Sally had turned eighteen in January 2016. More importantly, a Virginia court declared that Sally was a mentally incapacitated adult who needed a guardian. The Virginia court then appointed Lynne as Sally's sole guardian under Virginia's Uniform Adult Guardianship and Protective Proceedings Act. VA. CODE ANN. §§ 64.2-2000 to -2029 (accord N.J.S.A. 3B:12B-1 to -21). By its plain language, the Virginia act applies to adults. Ibid. Virginia law also provides that "unless an exception is specifically provided in this Code, a person shall be an adult, shall be of full age, and shall reach the age of majority when he [or she] becomes 18 years of age." VA. CODE ANN. § 1-204. Research has revealed no Virginia statutory exception that would modify the reach of either the Uniform Adult Guardianship Act or the UCCJEA.

Significantly, Kurt had notice of the guardianship application, he did not object, and he signed the Virginia order, acknowledging that he had seen it. Before us, Kurt argues that he signed the order under duress. He points out that he put the notation "UD" by his signature on the Virginia order. Whether Kurt signed the order under duress is not an issue appropriately before us. Instead, to the extent that Kurt can raise that issue, he must do so in Virginia where the order was entered.

The family court in this matter reasoned that the UCCJEA continues to control because Sally was mentally incapacitated and, at the time it entered its order in February 2018, Sally was still under the age of twenty-one. While there may be circumstances where New Jersey could interpret the UCCJEA to apply to a person over the age of eighteen, we do not reach that question. When Virginia entered the guardianship order, it classified Sally as an adult who needed a guardian. It would run counter to one of the fundamental purposes of the UCCJEA for New Jersey to make a different determination. In that regard, Virginia has also adopted the UCCJEA. VA. CODE ANN. §§ 20-146.1 to -146.38. Research has disclosed no Virginia case holding that the UCCJEA applies to an individual who is over the age of eighteen.

We also note that there are two subsequent developments that support our holding. First, while this appeal was pending, Sally turned twenty-one in January 2019. Consequently, Sally is no longer a child even under the reasoning of the family court in its decision issued in February 2018.

Second, by agreement, the parties supplemented the record to include three Virginia orders entered in 2019, which addressed the guardianship. In one order, the Virginia court denied Kurt's motion to transfer the guardianship of Sally to New Jersey. The court also rejected Kurt's argument that Lynne had engaged in "unjustifiable conduct" sufficient to warrant the Virginia court to decline jurisdiction over the guardianship of Sally. In another order, the Virginia court modified the guardianship to allow Kurt to have visitation with Sally and directed that Kurt be given timely notification of "significant healthcare issues affecting" Sally. In the third order, the Virginia court denied Kurt's application to register the Virginia guardianship in New Jersey and to enforce the New Jersey parenting time orders.

Those Virginia orders demonstrate that in 2019 Kurt voluntarily sought relief in Virginia. Consequently, he should not be allowed to continue to seek different and conflicting relief from a court in New Jersey. Furthermore, on a practical note, Kurt has the relief he sought: he will be given parenting time with

Sally in accordance with the Virginia guardianship order. The Virginia order now provides for the same visitation schedule as the New Jersey family court's order of September 13, 2013.

As we have decided this case based on Virginia's determination that Sally is an adult, Kurt's remaining arguments concerning the application of New Jersey's implementation of the UCCJEA to individuals over the age of eighteen are moot. To the extent that Kurt has made arguments that we have not specifically addressed, we deem those arguments to lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION